UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

Joshua Adams

                                    Plaintiff,

            v.                                                              1:25-cv-0912-MKV

769-798 Ninth Successor
LLC and The Soiree Tea Co
LLC

                                    Defendant.
-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**


                                                Law Office of Jennifer E. Tucek, PC
                                                641 Lexington Avenue, 15th Floor
                                                New York, NY 10022
                                                *Attorney for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 2

SUMMARY OF ARGUMENT……………………………………………………………………..3

FACTUAL BACKGROUND ............................................................................................... 4

LEGAL ARGUMENT........................................................................................................ 7

STANDING UNDER TITLE III OF THE ADA…………...................................................... ………7

    A. Plaintiff has Adequately Alleged an Intent to Return to the Soiree...................................... 8

    B. Plaintiff is Entitled to Have All the Violations within the Soiree Remediated ..................... 10


CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.,* 458 F. Supp.

2d 160, 173 [S.D.N.Y. 2006]……………………………………………………….6

*Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 [1984]………………….…4

*Amidax Trading Grp. v. S.W.I.F.T.*, 671 F.3d 140, 145 [2d Cir. 2011]………………………………...5

*Ashcroft v.* 282 F.3d 147, 153 [2d Cir. 2001] …………………………………………………3,7

*Ashcroft v. Iqbal, 556 U.S. 662 [2009]* ….…………………………………………………………..3

*Baur v. Veneman*, 352 F.3d 625, 631 [2d Cir. 2003]...........................................................5

*Bell v. City of Boise*, 709 F.3d, 890, 901 [9th Cir 2013] ……………………………………..…8

*Calcano v. Swarovski N. Am. Ltd*. 36. F. 4th 68 [2nd Cir. 2022] ……………………………..6,7

*Faber v. Metro Life Insurance Company*, 648 F. 3d at 104…………………………………………..9

*Feltzin v. 183 S. Wellwood Ave Corp.,* No. 16-cv-5387 (ADS)(GRB), 2017

U.S. Dist. LEXIS 181273, 2017 WL 6994213, at *2 [E.D.N.Y. Oct. 25, 2017]……….……..5

*Friends of Earth, Inc. v. Laidlaw Environmental Services* (TOC). Inc. 528 U.S. 167 [2000]…….…8

*Grella v. Avis Budget Group, Inc*., No. 14-CV-8273 (CM), 2016 U.S.

Dist. LEXIS 19248, 2016 WL 638748, at *4 [S.D.N.Y. Feb. 11, 2016]...................................5

*Kreisler v. Second Ave. Diner Corp*., 731 F.3d 184, 187 [2d Cir. 2013] ..........................................5,7,8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 [1992].........4,6

*Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 [2d Cir. 1993] ....................................................2

*Shaywitz v. Am. Bd. Of Psych. And Neurology*, 675 F.Supp.2d 376, 382 ...........................................5

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 [2016],

as revised [May 24, 2016] …………………………………………………………………….6

*United States v. Vazquez*, 145 F.3d 74, 81 [2d Cir. 1998] ...................................................7

**Statutes**

FRCP 12(b)(6) ...............................................................................................................1

FRCP 55(b)(2) ...............................................................................................................1

**PRELIMINARY STATEMENT**

Plaintiff submits this Memorandum of Law in opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (the "Complaint") (Docket No. 37). Plaintiff's First Amended Complaint was unassailable.  However, due to Defendants' post-amendment choice to make alterations to the Facility and withhold that information, Plaintiff was forced to amend the complaint once again.  Since then, Defendants have harassed the undersigned with numerous emails and photos regarding newly purchased ramps that they later decided not to use, tables that "blend in with the décor" but provide no underside clearance, decisions and retractions of decision to close the inaccessible restroom altogether, and on and on.  I have spent countless hours explaining to Defendant what is required and have made several proposals, offering them time to obtain the assistance of a consultant and even to pay for an inspection, only to be met with contempt.  Meanwhile, Defendants continue to file frivolous Motions to Dismiss. The instant motion is so lacking in legal merit that Defendants have resorted to referencing another case handled by the undersigned that has absolutely no relevance to this case and in no way reflects badly on me or the Plaintiff in that case, who is not the Plaintiff in this case.

Plaintiff is deeply offended by Defendants' unprofessional behavior and frivolous motions which include defamatory and unprofessional statements and intends to move for sanctions and attorney's fees against this law firm in a separate motion.  Defendants have made numerous inappropriate comments in this case, including:

> "Counsel for Plaintiff has a long history of abusing the ADA in order to extort settlements out of small business, threatening them with ruinous litigation in exchange for cash payments without concern or regard for the actual remedial purpose of the ADA.  This litigation is no different.  Far from advancing the goals of the ADA, this lawsuit, and others brought by Plaintiff's counsel, trivializes them, weaponizing the statute for coercive purposes." (Defendants' Memorandum of Law at p.1) ("Defs. MOL")

Plaintiff ends this section by stating, "Accordingly, and consistent with *multiple recent dismissals* involving this Plaintiff and his counsel, Defendants respectfully submit that this action should be

dismissed with prejudice." (emphasis added) (*Id*). This statement is uncivil, unprofessional and unethical. It is also defamatory, as the undersigned has never had one case dismissed in her entire 30-year career. This law firm has made similar attacks against me in other cases where Defendants filed frivolous and unsuccessful motions to dismiss, and this behavior has reached a tipping point. The *relevant* legal arguments below establish that Plaintiff has adequately pled his ADA claim and should be allowed to finally to move forward with this case.

## SUMMARY OF ARGUMENT

Defendants assert that Plaintiff has not adequately pled an intent to return to the Soiree because he does not reside in the same neighborhood, has not pled any visits to any nearby establishments, has not pled any facts to support any specific interest in the Soiree, and has not returned to the Soire since filing the action.  The above arguments are belied by the clear allegations in the Complaint and the law.

The Complaint states that Plaintiff is a Christian mental health advocate and author of "Two Worlds, One Life," an exploration of religion and mental health, and visits the Hell's Kitchen regularly to meet with individuals and colleagues to provide support and resources.  Complaint at ¶ 27, The Amazon page further describing this book can be found at https://a.co/d/fp8kVDg.

Plaintiff alleges that he has a regular presence in the Hell's Kitchen neighborhood and visits local libraries, pubs and restaurants on a regular basis to meet with individuals and groups for peer support, resource information and referral, housing advocacy and information on the civil rights of people with disabilities.  Id at ¶ 28 and Adams Affidavit at ¶3.

Plaintiff alleges that he was and is very determined to patronize the Soiree because it appeared to be a quiet, serene and peaceful space in an otherwise rambunctious neighborhood that serves coffee and tea, as well as unique *cocktails* made with coffee and tea.  It also serves unique pastries which are beautifully displayed.   Id at ¶ 26 – 30, Adams Aff. at ¶ 3, 7.

Plaintiff has an ongoing desire to return the Soiree and specifically desires to return in November 2025 to meet with colleagues and friends to celebrate a special occasion and enjoy the tea and cocktails. Id at ¶ 18.

Plaintiff finds Defendants' continued assertion that Plaintiff has no intent to return because he has not attempted to return since the commencement of this action to be particularly frivolous since Plaintiff has alleged in the Complaint, and communicated to Defendants in other contexts that Plaintiff need not

3

engage in the "futile gesture" of visiting a Facility containing known barriers that the owners have no intention of remedying. (42 USC § 12188 [a][1]).  Id at ¶ 17.)

Defendants also assert that Plaintiff has not adequately alleged that he visited the Soiree at all and has either lied or made a mistake.  The Complaint clearly alleges two very personal and upsetting visits to the Soiree where Plaintiff stood outside of the restaurant in the cold waiting several minutes for someone to come to the door, only to be told that the Soiree has no ramp.  Id at ¶ 13, 14.

Plaintiff has recently learned that the Soiree does in fact have a ramp but has received no explanation for why the ramp was not made available on those two occasions. Id at ¶4.  The ramp, as reflected in Defendants' submissions to Plaintiff and the Court, is a portable ramp which is two feet wide and 28 inches long, which considering the rise of the step and the width of the wheelchair, is non-compliant and dangerous.   See Affidavit of Nicholas Shafer attached to Defendant's first Motion to Dismiss (DE 21-2) ("Shafer Aff ") at ¶ 34 Complaint at  ¶32.

Defendants also assert that they have obtained a new ramp which is six feet long, narrower than the first one and does not provide handrails in violation of several ADA Regulations.  "Shafer Aff at ¶ 37 and 38, and Complaint at ¶24 and 32 Section 1.  Plaintiff alleges that this ramp is even more dangerous than the first one.  *Id.*

Defendants do not even address the other alleged and serious violations which discourage Plaintiff from returning to the Soiree, including inaccessible tables, inaccessible service counters, inaccessible condiments counters, inaccessible dining counters and an inaccessible restroom which is located up a step with no ramp and has several other violations.  Id at ¶ 32.  As will be set out below, Defendants have no legitimate basis to challenge this Complaint and their motion to dismiss is not only meritless but frivolous and designed to harass and confuse.

 Plaintiff has clearly established standing under *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) as well as more recent cases cited by Defendants requiring more detail regarding past and future visits.  The facts alleged in *Calcano v. Swarovski N. Am. Ltd*. 36. F. 4th 68 (2nd Cir. 2022) and its progeny were simply implausible and have no resemblance to the instant matter. Indeed, "Assessing plausibility is a context specific task that requires a reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679(2009)

Finally, Plaintiff preemptively requests that if Defendants, in their Reply, provide new information regarding remediations, architect reports, or any other information not provided in their Motion, that the court disregard it or allow Plaintiff an opportunity to respond in a Sur Reply.

4

**FACTUAL BACKGROUND**

The following facts are drawn from the Complaint which incorporates by reference Plaintiff's Affidavit.   Plaintiff's Complaint seeks injunctive relief, attorney's fees, and litigation costs pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., and the ADA Accessibilities Guidelines ("ADAAG"), 28 C.F.R. Part 36.  ECF No.37   Plaintiff, Mr. Adams, suffers from spina bifida and hydrocephalus, is required to ambulate in a wheelchair, and suffers from a "qualified disability" under the ADA. Complaint at ¶ 3.  Plaintiff alleges that Defendant Soiree tea Co. LLC (the "Soiree") is a Limited Liability Company, authorized to conduct and conducting business in the State of New York, and is the owner and/or operator of the Soiree, a tea shop that also serves coffee, specialty drinks, cocktails and food in a serene Asian inspired setting.  *Id*. at ¶ 7,13.  Plaintiff alleges that Defendant 796-798 Ninth Successor LLC is a limited liability company and the fee owner of the building that houses the Soiree, fifteen residential units and additional commercial spaces. *Id* at ¶ 6

**Past Visits**

Plaintiff further alleges that Plaintiff visited the Soiree twice, once in October 2024 and then again on January 9, 2025, to enjoy the drinks and pastries, but was unable to enter as described in detail in the Complaint *Id* at ¶ 13-26, Joshua Aff ¶ 4-6. Briefly, during Plaintiff's visits, he waited outside for several minutes, only to be told there was no ramp.  He has since learned that there is a ramp stored in the back of the Soiree, but that it is only two feet long and 28 inches wide.  Defendants admit in their prior Memorandum of Law (Docket No 20-21) that the step is more than six inches high and cannot be traversed in a wheelchair without assistance. The dangers from the slope of the ramp combined with the insufficient width of only two feet and four inches, make traversing this ramp quite perilous – like walking a balance

5

beam up a steep hill (Complaint at ¶ 32, Joshua Aff at ¶ 5, 6).  Defendants do not explain why the ramp was not made available during Plaintiff's visits or why they cannot or should not provide a longer and wider ramp, and Plaintiff is entitled to obtain his own opinion on the matter.  The ADA requires that the ramp be one foot long for every inch of step, and at least 36 inches wide.  There is simply no excuse for failing to provide a compliant ramp.  Ideally, Defendant is entitled to a permanent ramp, but in the event this is not technically feasible or readily achievable, Plaintiff is entitled to a ramp accessible to the maximum extent feasible, considering the standard width of the entrance doorway, and the several feet of sidewalk leading to the curb.  Defendants do not even address the numerous other violations alleged in the Complaint. *Id* at ¶ 32.

Defendants allege that they recently purchased a new, long and narrow ramp that appears to be even narrower than the first one.  This information was submitted the Affidavit of Nicholas Shaffer, a principle of the Defendant tenant. Mr. Shafer asserts that they cannot utilize a wider ramp *because the doorway in only about 28 inches.*  (Shafer Aff at ¶ 3).  The photos submitted by Defendants make it obvious that the doorway is wider than the ramp.  If the doorway were only 28 inches, this would be another, very serious ADA violation, since the ADA requires that the doorway be 32 inches wide in order to accommodate a wheelchair.

Mr. Shafer also makes much of the legal fees he is expending to defend this matter.  On February 12, in our initial phone conversation, Defendants' counsel stated that the owners of the Soiree were his friends, that he was defending this case *pro bono* and that  he would litigate the matter to its conclusion. Defendants reiterated this in an email dated March 10, 2025, stating, "[T]he owners are close friends of mine and for that reason I have deferred all payments and charges until the conclusion of this case at which point we would seek to have your client's pay for any alleged fees incurred. "  Plaintiff was surprised to hear from Mr. Shafer that they have "incurred thousands of dollars in bills, and that "if the case is not

dismissed at this stage, the total cost of litigation will be so much that we will likely have to close down permanently. " This email is attached.

**Intent to Return**

Finally, Plaintiff alleges that he intends to visit the Soiree again, and specifically in November 2025, to celebrate with family, friends and members of the community to enjoy the unique drinks, both alcoholic and non-alcoholic, as well as pastries and other food in a serene Asian inspired setting. Complaint at ¶ at 18, 25 and Adams Aff. at ¶ 3, 7.

Plaintiff alleges he has strong ties to this neighborhood and frequents the neighborhood at least once a week for social and professional reasons. Plaintiff is a mental health advocate and the author of a book, Two Worlds, One Life, an exploration of religion and mental health with a focus on the difficulties faced by the "differently-abled." Complain at ¶ 25, Adams Aff. at ¶ 2, 3. He frequents the Hell's Kitchen neighborhood to meet with individuals and groups for peer support, resource information and referral, housing advocacy and information on the civil rights of people with disabilities. *Id.* He desires to frequent the Soiree, as it is a quiet, serene space that serves coffee, tea, as well as cocktails and is unique for those reasons. *Id.*

**LEGAL ARGUMENT**

**I. STANDING UNDER TITLE III OF THE ADA**

Plaintiff addresses first the issue of standing, which impacts the Court's jurisdiction over Plaintiff's claim. In their motion to dismiss, Defendants challenge Plaintiff's standing to bring this action. It remains true that "To survive the motion to dismiss, the pleadings must only 'allege facts that affirmatively and plausibly suggest that [Plaintiffs have] standing to sue.'" *Boelter v. Hearst Commc'n, Inc.*, 192 F. Supp. 3d 427, 437 (S.D.N.Y. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T.*, 671 F.3d 140,

7

145 (2d Cir. 2011)).  A plaintiff's "standing allegations need not be crafted with precise detail." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003).

To establish standing in the context of the ADA, a plaintiff must demonstrate: "1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [property] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013).  As recognized by the court in *Kreisler*, to satisfy the constitutional requirements of standing, "the injury in fact, . . . must be (a) concrete and particularized, and (b) actual or imminent." *Id*.  When a plaintiff seeks injunctive relief, the plaintiff must also demonstrate "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Grella v. Avis Budget Group, Inc.*, No. 14-CV-8273 (CM), 2016 U.S. Dist. LEXIS 19248, 2016 WL 638748, at *4 (S.D.N.Y. Feb. 11, 2016) (quoting *Shaywitz v. Am. Bd. Of Psych. And Neurology*, 675 F.Supp.2d 376, 382 (S.D.N.Y. 2009) (emphasis in original)).  A plaintiff complaining of injuries caused by alleged violations of the ADA "must still establish that such injuries were both concrete and particular to the plaintiff and must do so with sufficient specificity." *Feltzin v. 183 S. Wellwood Ave Corp.,* No. 16-cv-5387 (ADS)(GRB), 2017 U.S. Dist. LEXIS 181273, 2017 WL 6994213, at *2 (E.D.N.Y. Oct. 25, 2017) (citing *Lujan v. Defenders of Wildlife,* 504 U. S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)); *see Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) ("Particularization is necessary to establish injury in fact, but it is not sufficient.  An injury in fact must also be 'concrete.'").  "[T]he injury in fact that forms the basis for Plaintiff's standing has two parts: (1) the direct injury from personally encountering disability-based discrimination at Defendant's property, and (2) deterrence from using Defendant's property because it is

not ADA compliant." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.,* 458 F. Supp. 2d 160, 173 (S.D.N.Y. 2006).

### A.  Plaintiff has Adequately Alleged an Intent to Return to the Soiree

Defendants argue that Plaintiff fails to plead an "intent to return" because he does not live in proximity to the Soiree and cite to *Calcano v. Swarovski N. Am. Ltd*. 36. F. 4th 68 (2nd Cir. 2022) for their proposition.  In *Calcano,* the Court found that Plaintiff's threadbare assertions were conclusory and thus did not raise a reasonable inference of injury.  The appeal involved five lawsuits in which visually impaired Plaintiffs sued Defendant stores under the ADA for failing to carry braille gift cards.  The court raised the following issues: One of the stores in question did not even exist; Plaintiff's failed to provide *any* details about their past visits to the alleged stores; Plaintiffs did not state why they wanted to purchase braille gift cards, and; Plaintiffs' complaints were cut and paste and fill in the blanks pleadings.

The *Calcano* case is distinguishable from the instant matter.  Plaintiff's Amended Complaint is *not* a cookie cutter fill in the blanks pleading.  It clearly states when and why and how Plaintiff attempted to visit the restaurant- with detail and specificity. It clearly states Plaintiff's desire to return to the restaurant, as he frequents the Hell's Kitchen neighborhood for social and professional reasons. He desires to return to this location to enjoy the drinks, both alcoholic and non-alcoholic, as well as the pastries in a serene Asian inspired setting. He plans to return in November to celebrate an occasion with friends and colleagues. This case is specific to his visits and the numerous specific barriers that exist in an otherwise desirable and unique space. The facts alleged in *Calcano* were simply implausible and have no resemblance to the instant matter. ("Assessing plausibility is a context specific task that requires a reviewing court to draw on its judicial experience and common sense.") *Ashcroft* at 679.  Accordingly, Plaintiff has adequately alleged a "plausible intention or desire" to return to the soiree considering the well-pled allegations in the Complaint.

9

Defendants also argue that Plaintiff's allegations of past visits do not support his alleged intent to return. They argue that the visits alleged with specificity in the Complaint "likely never happened." Defendants' arguments take issue with Plaintiff's credibility and have no place in a motion to dismiss, especially when Defendants have provided no evidence to support their assertion that Plaintiff was lying or mistaken. Defendants raise other issues that are not relevant to the adequacy of the Complaint: Plaintiff's mode of transportation and Plaintiff's attempts to visit the Soiree post-litigation. Finally, there is merit to Defendants' repeated harangue that Plaintiff has not attempted to re-visit the Soiree post-litigation. It is well settled that a Plaintiff need not engage in the "futile gesture" of visiting a Facility containing known barriers that the owners have no intention of remedying. ((42 USC § 12188 [a][1].)

Finally, Defendants erroneously rely on a recent Eastern District case, *Adams v. 98-208 Para Realty Corp.,* 22-cv-02135 (MKB-SJB) for his assertion that Plaintiff must allege specific other locations in the area that he visits or face dismissal. The magistrate judge in that case held that beyond vague assertions that plaintiff visited the facility on an unknown date, and that he intended to visit the location in the future, he provided no details about such visits. Such conclusory allegations are insufficient to establish an "injury in fact". The Court, therefore, issued a *sua sponte* report and recommendation that the case be dismissed. Most importantly because Plaintiff had not alleged any past attempts to visit the property and alleged no definitive plans to dine there in the future. *Id* at p.1 and 6  Nowhere in the holding of that case does it say that Plaintiff is required to state the other places he visited in that neighborhood. Plaintiff here alleges that he regularly visits public libraries, pubs and restaurants in this neighborhood, which in the context of the specific allegations of this Complaint, is sufficient, despite Defendants demands for more information. Id at ¶ 29.

10

**B.  Plaintiff is Entitled to Have All the Violations within the Soiree Remediated**

The Defendants do not even mention the other violations alleged in the Complaint in detail at ¶ 26. The Second Circuit held in *Kreisler v. Second Avenue Diner Corp.*731 F.3d 184 (2d Cir. 2013) held that once a plaintiff establishes standing with respect to one barrier in a place of public accommodation, that plaintiff may bring ADA challenges with respect to all other barriers on the premises that affect his particular disability. ("A contrary rule would undermine the ADA's remedial purpose and impede Congress's intent that the ADA serve as a clear and comprehensive national mandate to eliminate discrimination against disabled individuals. Moreover, such a rule would burden businesses and other places of accommodation with more ADA litigation, encourage piecemeal compliance with the ADA, and ultimately thwart the ADA's remedial goals of eliminating widespread discrimination against the disabled and integrating the disabled into the mainstream.") *Id* at 190.

Defendants argue that the removal of the architectural barriers is impossible.  They present this argument through the testimony of Mr. Shafer who is not an architect or ADA expert and is simply not qualified to opine on the technical feasibility or affordability of making accommodations to the maximum extent feasible required under the ADA. 2010 ADA Standards, 28 CFR Part 36, Subpart D. There are several violations inside the Soiree that are not even addressed, and Mr. Shafer has proven to be a less than reliable witness, as he misstated the width of the entrance door, and cites to the New York City Building Code rather than the ADA.  In fact, Mr. Shafer makes no reference to the ADA or its regulations whatsoever.  Whether remediations are technically feasible or readily achievable, as well as what remediations are appropriate, are issues that must be addressed by an expert.  These are not factual issues and are not issues to be resolved at the pleading stage, especially when the evidence is within the exclusive control of the Defendants.

**Defendant's Assertion that Plaintiff is Solely Seeking Legal Fees is Unfounded, Unethical and Offensive.**

Plaintiff addressed this argument above and will not belabor the point.  However, the undersigned feels compelled to respond to Defendants' references to the case, *Dunston v. 243 Dekalb Avenue, LLC* 24-cv -4437 (EDNY)(BMC).  In fact, the undersigned welcomes the opportunity to address this case which reflects negatively on everyone involved except for me and the Plaintiff (who is not the Plaintiff in this case).

This case was before Judge Brian M. Cogan who, at the initial conference held on 9/27, deemed the violations established and Ordered Plaintiff to file a motion for summary judgment on the remaining issues within 14 days. The Parties quickly settled the matter and filed a Notice of Settlement on 10/2/2024.  Plaintiff moved to reopen the case on 10/20/24 as Defendant failed to execute the Agreement timely.  Judge Cogan reopened the case and set a trial date for 11/25/2024.  The Parties again settled the matter and provided notice of settlement. Judge Cogan held a hearing to put the Agreement on the record and closed the case.

The Defendant failed to timely reimburse Plaintiff's attorney's fees and gave the following excuses: he sent me $1,000 instead of $10,000 by mistake; he mistakenly sent the funds to his ex-wife and could not get them back; and he had a heart attack.  I moved to reopen the case and enforce the Agreement.  The remediations were not due for another six months and I did not yet anticipate that the remediations would not be completed as agreed.

On January 30, 2025, in a lengthy and scathing decision, Judge Cogan Ordered me to provide proof that the remediations had been completed in *every previous case* brought by Plaintiff in his Court, and to produce all the *settlement agreements* in connection with those cases, even though I was not the attorney of record on any of those cases and the Agreements were confidential. Nevertheless, I complied with the Order providing proof that all the remediations in those cases had been completed, and the settlement agreements.

Judge Cogan further Ordered that he would stay the enforcement of my money judgment, or issuance of any injunction regarding the barriers, until the time for remediation in our case had expired.

While Plaintiff was waiting for Defendant to complete the remediations, Defendant's counsel finally told me that the payment was in fact delayed due to his mistaken belief that the claim was fully covered by insurance, only to learn after settlement that his clients had a self-insured retention.  Defendant had by this time, sent me $8,500.  I told Defendant's counsel I would forego the additional $1,500 and hoped

12

that Defendant would apply it toward making the property accessible. DE. 27 p.2. We agreed that the pressure to settle this matter was not helpful.

In accordance with Judge Cogan's January 30 Order, I sought an injunction to have the last dew repairs made, pursuant to the Agreement. DE. 27. My decision to seek the injunction was partly based on my desire to disabuse Judge Cogan of the notion that I was only interested in the legal fees. Surprisingly, Judge Cogan issued yet another scathing Order stating, "[I]t is not this Court's responsibility to repeatedly attempt to instruct plaintiff's counsel on how to enforce a judgment. But because the Court is spending too many resources dealing with this matter, the Court advises counsel that a motion to enforce a judgment requires a proposed Order to Show Cause, a supporting affidavit with such exhibits that may be necessary, and a memorandum of law setting forth the legal basis and authority for the relief sought." (June 30 Order). Plaintiff was deeply angered, and the undersigned was exhausted, and we chose to remove this matter from Judge Cogan's jurisdiction entirely. By this time, Defendant had made most of the remediations and assured me that it would complete the work in the next few months.

The case described above does not demonstrate that Plaintiff is solely interested in legal fees but just the opposite. Defendants' accusations are immature and overly simplistic. The undersigned cares deeply about the ADA, and her clients, but is also trying to make a living, like any other private attorney.

## CONCLUSION

Plaintiff has stated a claim under the ADA under Kreisler and the more recent Second Circuit decisions requiring more specificity in pleading with respect to past and future visits to the Facility. In sum, upon visiting the restaurant to enjoy the drinks, pastries and ambience, Plaintiff alleges that the benefits and services provided to other guests were not available to him. Plaintiff further alleges that he will visit Defendants' restaurant again, hopefully after the Defendant is compliant with the laws and regulations, to enjoy the food and ambience with friends and family, and friends. He specifically desires to return in November 2025, if the Soiree is made accessible to him. Considering the well-pleaded allegations in the Complaint, the Plaintiff respectfully requests that the court deny Defendants' motion be denied in its entirety.

13

14

Dated: September 16, 2025

Respectfully Submitted,

By:    /s/Jennifer E. Tucek

Law Office of Jennifer E.Tucek, PC
641 Lexington Avenue, 15th Floor
New York New York 10022
(917) 669-6991
Bar No: JT2817

*Attorney for Plaintiff*

14