USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/22/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA ADAMS,<br><br>Plaintiff,<br><br>-against-<br><br>796-798 NINTH SUCCESSOR LLC and THE SOIREE TEA CO LLC,<br><br>Defendants. | 25-cv-00912 (MKV)<br><br>**ORDER GRANTING MOTION TO DISMISS** |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Joshua Adams initiated this action against Defendants The Soiree Tea Co LLC (the "Soiree") and 796-798 Ninth Successor LLC (the "Landlord") by filing a complaint. [ECF No. 1]. Plaintiff has twice since amended his complaint. [ECF Nos. 20, 37] (respectively, the "First Amended Complaint" and the "Second Amended Complaint" or "SAC"). Plaintiff seeks injunctive relief and an award of costs and fees under the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.* (the "ADA"). *See* SAC at 9.

The First Amended Complaint was filed in response to a pre-motion letter seeking a conference on an anticipated motion to dismiss, *see* [ECF No. 17], and the Second Amended Complaint was filed in response to a motion to dismiss that had then been filed, *see* [ECF Nos. 33, 34]. In both instances, the Court admonished Plaintiff that he would not be afforded leave to further amend in response to issues already raised in Defendants' papers. *See* [ECF No. 16] at 1; [ECF No. 36] at 3.

Defendants filed a motion to dismiss the Second Amended Complaint, attaching three exhibits. [ECF No. 38] (the "Motion to Dismiss" or MTD).[1] The Motion to Dismiss also refers

[1] The exhibits are filings from another case litigated by Plaintiff's counsel, *Dunston v. 243 Dekalb Avenue LLC et al.*, No. 24-cv-4437 (E.D.N.Y. June 30, 2025), to which Defendants devote a not insignificant portion of their briefing. *See*

to the motion previously filed in this case, [ECF No. 21], and the exhibits attached thereto. Defendants make a "fact-based motion pursuant to Rule 12(b)(1)," challenging Plaintiff's lack of standing to proceed. MTD at 2. Plaintiff filed an opposition, [ECF No. 39], and then filed a corrected opposition, [ECF No. 40] (the "Opposition" or "Opp."), attaching a previously unattached exhibit, [ECF No. 40-1].[2] The Second Amended Complaint itself attached a declaration by Plaintiff. [ECF No. 37-1] ("Plaintiff's Declaration" or "Pl. Decl."). Defendant replied to the Opposition. [ECF No. 41] (the "Reply").

With that, the Motion to Dismiss is now fully briefed.

## BACKGROUND[3]

Plaintiff resides in Brooklyn, New York. SAC ¶ 2. He was born with conditions that require him to use a wheelchair to ambulate. *Id.* ¶ 3. The Soiree is located at 796 9th Avenue, New York, New York 10019. *Id.* ¶ 4. It serves a "wide variety of coffee and tea blends from around the world, and unique cocktails that blend coffee and teas amid an elegant, Asian and French inspired space." *Id.* ¶ 13.

Sometime in October of 2024, "Plaintiff wished to visit" The Soiree. *Id.* ¶ 14. Apparently having made his way there, he "did not see a sign or doorbell," but a "young Asian man in front

---

MTD at 13–16 (asking the Court to "take notice of the conduct by Plaintiff's counsel" in that case). Defendants also allude to "multiple recent dismissals involving this Plaintiff and his counsel," MTD at 1, apparently suggesting that this is an instance of "copy-and-paste litigation," *Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 766 (S.D.N.Y. 2020), *aff'd sub nom. Calcano v. Swarovski N. America Ltd.*, 36 F.4th 68 (2d Cir. 2022). These materials are not determinative of the Court's analysis.

[2] The Court disregards this attachment, which is an email between counsel concerning defense counsel's fee arrangement with Defendants.

[3] The allegations in the Second Amended Complaint are generally repeated, incorporated by reference, or otherwise attested to in Plaintiff's Declaration. For that reason, the Court cites to both documents more or less interchangeably. In referring to Plaintiff's "allegations," the Court does recognize that he has also affirmed their veracity in a signed submission. Nevertheless, "conclusory" allegations do not become legally sufficient merely because they are "contained in . . . affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits.").

of the restaurant whom Plaintiff assumed worked there" told Plaintiff that "he did not think" there "was any way [Plaintiff] could enter." *Id.* "On January 9, 2025, Plaintiff again visited the [Soiree] and happily observed that there were a sign and doorbell." *Id.* ¶ 15. Nevertheless, he was told there was no ramp by someone who "came out and began to walk down the street" and "said yes" when asked whether he worked at Soiree. *Id.*

Plaintiff recognizes that a filing in this litigation indicates that The Soiree had "purchased" a "portable ramp" on "March 30, 2024." *Id.* ¶ 19 (citing [ECF No. 8]). But that ramp "was not made available during Plaintiff's attempted visits." *Id.* ¶ 20. Moreover, it is "not long enough" or wide enough under applicable regulations, *id.* ¶ 32.I., and is "otherwise non-compliant," *id.* ¶ 23. Plaintiff also acknowledged that, as of August 14, 2025, "Defendants [had] recently purchased another ramp which is also inaccessible." *Id.* ¶ 32.I; *see also id.* ¶ 24.

Plaintiff has not returned to The Soiree since January 9, 2025, although he "specifically wishe[d] to visit . . . during the month of November 2025 to meet with colleagues to have tea and cocktails, and with friends to celebrate a special occasion." *Id.* ¶ 18. He "frequent[s] the Hell's Kitchen neighborhood at least once a week to meet with friends, and provide peer support, resource information and referral, housing advocacy and information on the civil rights of people with disabilities." Pl. Decl. ¶ 3. He "visits local public libraries, pubs and restaurants in this neighborhood on a regular basis" for that reason. SAC ¶ 29. He wanted to do this at The Soiree "during the day or evening" with "friends and peers from the neighborhood" because "it looked really nice and quiet and peaceful" and "serves both coffee and teas, as well as cocktails and pastries." Pl. Decl. ¶ 3. The Soiree's "serene and quiet ambience which creates an oasis in an otherwise rambunctious and noisy area" is a particular draw. SAC ¶ 30.

Plaintiff also alleges a slew of additional non-compliant features ***within*** The Soiree. *Id.* ¶ 32.VI (“inaccessible mirror (too high) in restroom” and “non-compliant door lock at restroom door requires twisting of the wrist” (citation modified). He further alleges, on information and belief, that “the interior . . . underwent a complete interior renovation” at some point but Defendants failed to “apply 20% of total renovation expenditures to make the [Soiree] ADA compliant.” *Id.* ¶¶ 35–36.

**STANDARD**

“Standing to sue is a doctrine rooted in the traditional understanding of” Article III’s limitation of the federal judicial power to “‘Cases’ and ‘Controversies.’” *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). “To establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.” *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation modified). “Each element of standing must be supported with the manner and degree of evidence required at the successive stages of litigation.” *New York v. Yellen*, 15 F.4th 569, 575 (2d Cir. 2021) (citation modified). “In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.” *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In this posture, the Court has “broad discretion.” *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).

“A Rule 12(b)(1) motion . . . may be either facial or fact-based.” *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). “When confronted with a defendant’s facial challenge to standing, *i.e.*, one based solely on the allegations of the complaint or the complaint and exhibits attached to it, plaintiffs have no evidentiary burden, for both parties can be said to rely solely on

the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (citation modified). Where, by contrast, a defendant makes a "fact-based" motion, "the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant"—at least to the extent that the defendants' "affidavits . . . reveal the existence of factual problems in the assertion of jurisdiction." *Carter*, 822 F.3d at 57 (citation modified). In such a case, the Court must make findings of fact. *See id.*

In general, "the burden of proving jurisdiction is on the party asserting it." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (citation modified).

## **ANALYSIS**

The principal issue in this case is whether Plaintiff has plausibly pled an injury in fact sufficient to give rise to standing. *See* MTD at 1 ("Despite having amended the complaint *twice*, Plaintiff has *still* failed to plausibly allege a concrete injury-in-fact and offered no facts indicating an intent to return to the premises." (emphasis original)).[4] In order to establish an injury in fact in the context of an action under the ADA for injunctive relief, a plaintiff must allege 1) a "past injury under the ADA"; 2) facts making it "reasonable to infer that the discriminatory treatment [will] continue"; and 3) facts making it "reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' businesses to plaintiff's home, that plaintiff intend[s] to return to the subject location." *Calcano v. Swarovski N. America Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (citation modified) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d

[4] Defendants also argue that the alleged injury is unlikely to be redressed by a favorable decision because the removal of the architectural barrier is, variously, "impossible," "not readily achievable," "disproportionate in cost," and not necessary because "use of a portable ramp is permissible when a permanent ramp is not readily achievable." MTD at 9–14 (citation modified). The Court does not reach these arguments, which, at minimum, approach closely the merits.

Cir. 2013)). The third factor, which is the focus of Defendants' motion,[5] "assist[s] courts in determining whether an alleged prospective injury is sufficiently 'concrete and particularized.'" *Calcano*, 36 F.4th at 74 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

In assessing the "highly fact-sensitive" question of a plaintiff's intent to return, courts consider "a range of factors such as the frequency of the plaintiff's past visits" and the proximity of the defendant's services . . . to the plaintiff's home along with any other factors relevant to the calculation including the plaintiff's occupation or demonstrated travel habits." *Dominguez*, 613 F. Supp. 3d at 765 (citation modified, collecting cases). The uniqueness of a defendant's offerings can impact the calculus. *See, e.g.*, *Pincus v. Nat'l R.R. Passenger Corp.*, 581 F. App'x 88, 90 (2d Cir. 2014) (summary order) (deemphasizing otherwise "dispositive" factors where "plaintiff [was] seeking future access not to one of many local restaurants, but to the only national railway system"). "Specific descriptions of prior visits, of the plaintiff's close proximity to the property or of why a plaintiff is interested in the specific business at issue, as opposed to other, similar merchants" may "tend[] to support" an intent to return, but "magic words" are not sufficient. *Gannon v. 124 E. 40th St. LLC*, No. 22 CIV. 361 (LGS), 2024 WL 4107746, at *3 (S.D.N.Y. Sept. 6, 2024) (citation modified); *see also Calcano,* 36 F.4th at 75 ("Plaintiffs' conclusory invocations of the factors we found relevant in *Kreisler* are insufficient to establish standing.").

The Court begins by noting that Defendants' characterization of their motion as a "fact-based" challenge to Plaintiff's standing, MTD at 2, is something of an overstatement. The only "disputed" fact—aside from the ultimate conclusion of Plaintiff's intent to return—is the "existence of" the October 2024 visit. MTD at 5 (pointing to [ECF No. 21-2] ¶ 50; [ECF No. 21-

[5] Defendants also argue that it is not reasonable to infer that the discriminatory treatment will continue because they have voluntarily ceased the offending conduct by, *inter alia*, purchasing a six-foot ramp. MTD at 8–9. Again, the Court need not make this merits-adjacent determination.

3] at 7 to establish that "the Soiree has had a disability doorbell since June 2024," such that "if Plaintiff 'did not see a sign or doorbell' in October 2024, then he must have been at a different establishment, and not the Soiree" (citation modified)).[6] While Defendants do refer to material outside of the pleadings, that material tends at most to undermine the legal sufficiency of Plaintiff's allegations rather than to contradict their veracity. *See, e.g.*, Reply at 2–3 (pointing out that Plaintiff provides "no explanation of why he would choose The Soiree over countless accessible cafés in Brooklyn or Midtown, including one directly across the street"); [ECF No. 21-3] at 4–6 (showing the nearby café).

The Court considers those materials, as it may, *Makarova*, 201 F.3d at 113, but does not understand them to "reveal the existence of factual problems in the assertion of jurisdiction." *Carter*, 822 F.3d at 57 (citation modified). Instead, the Court simply observes that nothing in Plaintiff's papers is sufficient to "nudge [his] claims across the line from conceivable to plausible." *Calcano*, 36 F.4th at 76 (citation modified) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).

The first and most obvious issue with Plaintiff's professed intent to return to The Soiree is that he does not live in "proximity" to it. *Gannon v. 124 E. 40th St. LLC*, No. 22 CIV. 361 (LGS), 2024 WL 4107746, at *3 (S.D.N.Y. Sept. 6, 2024) (citing *United States v. Melhuish*, 6 F.4th 380, 388 (2d Cir. 2021) (taking judicial notice of the distance between locations); *Kreisler*, 731 F.3d at 188 (observing that living "within several blocks" of establishment makes intent to return more plausible); *Calcano*, 36 F.4th at 76 (observing that an "inter-borough trip" makes intent to return less plausible)). He lives somewhere in Brooklyn, while The Soiree is in the Hell's Kitchen neighborhood of Manhattan. SAC ¶¶ 2, 4. Plaintiff would need to make an "inter-borough trip" of unspecified distance and duration just to find himself in proximity to The Soiree again. *Calcano*,

[6] The Court assumes that visit happened.

36 F.4th at 76. Because Plaintiff is accordingly not "pass[ing] by the [Soiree] three to four times a week," *Kreisler*, 731 F.3d at 187, it would take some real "nudg[ing]" on the other factors to move his claimed intent to return to this particular café "across the line from conceivable to plausible." *Calcano*, 36 F.4th at 76 (quoting *Iqbal*, 556 U.S. at 680).

But Plaintiff's "vague assertions" of "past visits" to The Soiree are likewise lacking in "details." *Calcano*, 36 F.4th at 76. Plaintiff's allegations about the "October 2024" visit, in particular, are almost spectrally vague. *See* SAC ¶ 14. To be as precise as the allegations permit, Plaintiff asserts that "in October 2024, [he] wished to visit [the Soiree], which was new to the area." *Id.* He further alleges that, on some unspecified date at some unspecified time, he "did not see a sign or doorbell"—which Defendants have clarified were both there, [ECF No. 21-2] ¶ 50; [ECF No. 21-3] at 7—but did see "a young Asian man" whom he "assumed worked there." SAC ¶ 14. The "young Asian man" said "he did not think" there was a way for Plaintiff to enter The Soiree. *Id.* Plaintiff's allegations about the January 9, 2025, visit are only slightly more substantial, in that Plaintiff alleges that it was "cold" outside and that the "young man" with whom he interacted this time did actually confirm his employment at The Soiree. *Id.* These are hardly the "specific descriptions of prior visits" sufficient to "support an intent to return." *Gannon*, 2024 WL 4107746, at *3 (citing *Davis v. Wild Friends Foods, Inc.*, No. 22 Civ. 04244, 2023 WL 4364465, at *6 (S.D.N.Y. July 5, 2023); *Kreisler*, 731 F.3d at 188; *Calcano*, 36 F.4th at 75).

Nor does Plaintiff plausibly allege visits of such "frequency" as would make that inference reasonable. *Kreisler*, 731 F.3d at 188. To be sure, Plaintiff alleges that he "visits local public libraries, pubs and restaurants in [Hell's Kitchen] . . . to meet with individuals and groups for peer support, resource information and referral, housing advocacy, and information on the civil rights of people with disabilities," SAC ¶ 29, "at least once a week, especially in the spring and summer

months," *id.* ¶ 25. (His professed intent to return, however, is "celebrat[ory]." *Id.*; *see also id.* ¶ 18.) He also observes that the neighborhood is "rambunctious and noisy." *Id.* ¶ 30.

These allegations of "frequent[ing] other [establishments] in [the] neighborhood" are not just "generic" and "conclusory," *Dominguez*, 613 F. Supp. 3d at 766 (citing, *inter alia*, *Kreisler*, 731 F.3d at 186; *Camarillo v. Carrols Corp.*, 518 F.3d 153, 155 (2d. Cir. 2008)), but borderline contradictory, *see Dominguez*, 613 F. Supp. at 766 (The "Court 'need not credit a complaint's conclusory statements without reference to its factual context.'" (quoting *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011)); *see also id.* at 145 (Where an allegation is "contradicted by more specific allegations or documentary evidence," the Court need not accept it at face value.). Why, for example, does Plaintiff actively arrange for meetings in a "rambunctious and noisy" neighborhood distant from his own? SAC ¶ 30. Does he go there to "meet with colleagues" or to "celebrate" "with friends"? *Id.* ¶ 18. If he "frequents th[e] neighborhood . . . especially in the spring and summer months," *id.* ¶ 25, why are his only affirmed visits there in October and January, Pl. Decl. ¶ 4, and his only specified plan to return for November, SAC ¶ 18?

Particularly against the geographical background established by Plaintiff's papers, his explanation of "why [he] is interested in the specific business at issue, as opposed to other, similar merchants" falls flat. *Gannon*, 2024 WL 4107746, at *3 (citing *Davis*, 2023 WL 4364465, at *6 (detailed allegations of a product's "distinctive[ness]" and plaintiff's "interest" in it "in particular" were sufficient to make plausible his professed intent to "return" to e-commerce site to purchase the product)). Plaintiff describes his interest in The Soiree as follows: "It looked really nice and quiet and peaceful and . . . serves both coffees and teas, as well as cocktails and pastries." Pl. Decl. ¶ 3. His Second Amended Complaint, which is an unsworn document authored in the third person by his attorney, adds some detail, noting that The Soiree offers a "variety of coffee and tea blends

from around the world, and unique cocktails that blend coffee and teas amid an elegant, Asian and French inspired space." SAC ¶ 13. As Defendants point out, however, there is another café very close to The Soiree that appears to be both similar to The Soiree and accessible by wheelchair. *See* Reply at 2–3 (pointing out that Plaintiff provides "no explanation of why he would choose The Soiree over countless accessible cafés in Brooklyn or Midtown, including one directly across the street"); [ECF No. 21-3] at 4–6 (showing the nearby café). Defendants also note that "Plaintiff has never ordered a single beverage or pastry for delivery or pickup." Reply at 4; *see also* [ECF No. 21-2] ¶ 42.

The Court, of course, does not find Plaintiff's allegations of interest in The Soiree to be patently false or otherwise incredible. Instead, the Court simply notes that these allegations, when considered in the broader "factual context," *Amidax*, 671 F.3d at 146, "hardly support[] an inference that" Plaintiff "would 'immediately' make [an] inter-borough trip just to purchase" coffee, cocktails, and pastries from The Soiree were The Soiree to implement tomorrow the accommodations he seeks. *Calcano*, 36 F.4th at 76.

Indeed, there is no indication that Plaintiff has returned to The Soiree at any time in the past year and a half. It is true that Plaintiff need not "engage in a futile gesture" to the extent that he "has actual notice that" The Soiree "does not intend to comply with ADA provisions." *Kreisler*, 731 F.3d at 189 (citation modified, quoting 42 U.S.C. § 12188(a)(1)). This, however, just means that Plaintiff "'need not attempt to overcome an obvious barrier' to allege an injury in fact, which in some cases could result in physical harm." *Calcano*, 36 F.4th at 75 n.4 (quoting *Kreisler*, 731 F.3d at 188).

The Court does not doubt, in this respect, that Plaintiff's inability to access The Soiree when he was at the doorstep constituted an injury under the first prong of the injury-in-fact

analysis. *See id.* ("Deterrence constitutes an injury under the ADA." (citation modified)). But this is a different question than that of his intent to return. *Kreisler*, 731 F.3d at 188 ("[Plaintiff] alleged that the step deterred him from frequenting the Diner; the Diner has not indicated an intent to remedy this barrier; ***and*** [plaintiff's] testimony and proximity to the Diner create a reasonable inference that he would frequent the Diner were the violation remedied." (emphasis added)).

Here, Defendants have at least attempted to provide reasonable accommodations, including in direct response to this litigation. *See* [ECF No. 21-2] ¶¶ 29–43 (listing attempts at accommodation, including the post-suit, pre-SAC purchase of a new, six-foot ramp).[7] Plaintiff's decision not to return to The Soiree—whether for the celebratory outing he had intended to make in November 2025, or simply to pass by during one of his weekly trips to Hell's Kitchen—further undermines the plausibility of his professed intent to return.

Why would someone make an "inter-borough trip," *Calcano*, 36 F.4th at 76, to a "rambunctious and noisy" neighborhood, SAC ¶ 30, for "cocktails and pastries," Pl. Decl. ¶ 3, at "one of many local [cafés]," *Pincus*, 581 F. App'x at 90, after a year and a half without expressing any interest other than the litigation of a lawsuit? Plaintiff's papers provide no plausible answer to this question. His "'some day' intentions" are not based upon "any description of concrete plans," *Harty*, 28 F.4th at 443 (quoting *Lujan*, 504 U.S. at 564), that make sense in the broader "factual context," *Amidax*, 671 F.3d at 146. Those professed intentions accordingly "do not support a finding of the actual or imminent injury that Article III requires." *Harty*, 28 F.4th at 443 (citation modified) (quoting *Lujan*, 504 U.S. at 564); *see also Adams v. 98-208 Para Realty Corp.*, No. 22-CV-2135 (MKB), 2023 WL 5827595, at *5 (E.D.N.Y. Sept. 8, 2023) ("These vague, 'some

[7] The Court does not wade into the dispute about "the . . . adequacy of the new six-foot ramp," Reply at 9, except to note that Plaintiff's Second Amended Complaint—but not Plaintiff's Declaration—alleges that the new ramp is still "non-compliant." SAC ¶ 24.

day' intentions do not support a finding of 'actual or imminent' injury required by Article III." (quoting *Lujan*, 504 U.S. at 564)).[8]

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss Plaintiff's Second Amended Complaint is GRANTED, and the Second Amended Complaint is DISMISSED. The Clerk of Court is respectfully requested to terminate docket entry number 38 and close this case.

**SO ORDERED.**

**Date: September 22, 2026**
**New York, NY**

Mary Kay Vyskocil

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[8] Had Plaintiff established "standing to pursue injunctive relief as to the [Soiree's] entrance, he [would] ha[ve] standing to seek removal of all barriers inside the [Soiree] related to his disability that he would likely encounter were he able to access the [Soiree]." *Kreisler*, 731 F.3d at 188; *see* Compl. ¶ 32.II.–VI. (cataloguing indoor barriers). But he has not established standing at the door, so he cannot challenge barriers that might exist inside.